UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| LOUIS J. PEARLMAN, *et al.*, ) | Case No. 6:07-bk-00761-KSJ |
| ) | Chapter 11 |
| Debtor. ) | Jointly Administered |
| ) | |
| | |
| SONEET R. KAPILA, as CHAPTER 11 ) | |
| TRUSTEE for TRANS CONTINENTAL ) | |
| AIRLINES, INC., TRANS ) | Adv. P. No. 6:09-ap-00715-KSJ |
| CONTINENTAL RECORDS, INC., and ) | |
| LOUIS J. PEARLMAN ENTERPRISES, ) | |
| INC., ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| INTEGRA BANK, N.A. ) | |
| ) | |
| Defendant. ) | |
| ) | |

MEMORANDUM OPINION DENYING BANK JOINT DEFENSE GROUP
TEST CASE NO. 1 MOTION TO DISMISS

Integra Bank, N.A. seeks to dismiss Test Case No. 1 on two grounds.[1]  First, Integra argues the trustee has failed to state a claim for actual fraudulent transfer under § 548(a)(1)(A) of the Bankruptcy Code[2] because the so-called "Ponzi scheme presumption"—which is the trustee's sole basis for proving actual fraud—does not apply to the series of loan repayments Pearlman and his companies made to Integra.  Second, Integra alleges the trustee has pled facts that, on

---

[1] Doc. No. 5.  The Chapter 11 trustee, Soneet R. Kapila, filed a Response in Opposition to Bank Joint Defense Group's Test Case No. 1 Motion to Dismiss and Memorandum in Support Thereof (Doc. No. 9).  Integra subsequently filed a Reply in Support of its Motion to Dismiss (Doc. No. 13), and the trustee filed a Sur-Reply in Opposition (Doc. No. 17).  On October 29, 2010, at a hearing before the Court, the parties presented oral argument on Integra's motion.

[2] All references to the Bankruptcy Code are to Title 11 of the United States Code.

their face, establish the bank's good faith defense to his fraudulent transfer claim. Because the trustee's complaint alleges that the loan repayments made to Integra perpetuated Pearlman's other—undeniably Ponzi—schemes, the Court finds the trustee has pled enough facts to state a claim for relief based on the Ponzi scheme presumption. Likewise, the Court does not find that Integra's good faith defense is established on the pleadings, and Integra's motion is denied.

Since the commencement of these jointly administered bankruptcy cases,[3] the Chapter 11 trustee, Soneet Kapila, has filed over 700 adversary proceedings seeking to recover alleged fraudulent transfers. Relevant to this proceeding, on or about April 4, 2009, the trustee filed adversary complaints (the "Subject Adversaries") against Tatonka Capital Corporation, Integra Bank, N.A., American Bank of St. Paul, and First National Bank & Trust Company of Williston, Bank of America, N.A., First International Bank and Trust and its participants (together, the "Bank Joint Defense Group"), and numerous other financial institutions that loaned money to Pearlman or his companies and that subsequently received repayments from or on behalf of the debtors in connection with such loans.[4] These adversaries assert, among other things, claims for actual fraudulent transfer under § 548(a)(1)(A), claims for constructive fraudulent transfer under § 548(a)(1)(B), and analogous state law claims under § 544(b) of the Bankruptcy Code and applicable Florida Statutes.

On April 16, 2010, the Court entered the Bank Test Case Order under which certain procedures were adopted in order to facilitate the orderly, prompt, and efficient resolution of the Subject Adversaries.[5] The Bank Test Case Order established two test cases to help resolve the Subject Adversaries. Test Case No. 1 assesses the trustee's claims for *actual* fraudulent transfer

---

[3] The other jointly administered cases include: Trans Continental Television Productions, Inc., case no. 07-bk-01856, Trans Continental Aviation, Inc., case no. 07-bk-02431, Trans Continental Management, Inc., case no 07-bk-02432, Trans Continental Publishing, Inc., case no 07-bk-04160, Louis J. Pearlman Enterprises, LLC, case no 07-bk-01779, and TC Leasing, LLC, case no. 07-bk-04160.

[4] The adversary proceedings involved in these proceedings are as follows: 09-ap-67, 09-ap-54, 09-ap-534, 09-ap-750, 09-ap-106, 09-ap-52, 09-ap-715, 09-ap-71, 09-ap-68, 09-ap-864, 09-ap-50, 09-ap-474, 09-ap-716, and 09-ap-51.

[5] Doc. No. 2953 in the Pearlman main case.

under §§ 548(a)(1)(A), 544(b), and 550 of the Bankruptcy Code.  Likewise, the purpose of Test Case No. 2 is to assess the trustee's claims for *constructive* fraudulent transfer under §§ 548(a)(1)(B), 544(b), and 550 of the Bankruptcy Code.  Soon after entry of the Bank Test Case Order, the Bank Joint Defense Group selected Integra Bank as the lead bank for litigation purposes, which established this adversary proceeding as the lead adversary proceeding for all Test Case litigation.

The trustee's first amended complaint[6] against Integra alleges, in short, that Pearlman and his co-debtor companies—Trans Continental Airlines ("TCA"), Trans Continental Records ("TCR"), and Louis J. Pearlman Enterprises ("Enterprises")—perpetrated three different fraudulent money making schemes.  Two of the schemes were fraudulent investment schemes that all parties agree fit the classic Ponzi scheme model.  The first was known as the "Employee Investment Savings Account" (the "EISA Program"), under which TCA raised in excess of $300 million from hundreds of investors nationwide.  Pearlman, his broker intermediaries, and others at TCA allegedly promised investors, among other things, above-market rates of return for their investment and that their investments were FDIC insured.  Neither representation was true, and, instead, Pearlman and his cronies pocketed much of the investment funds and used new investments to repay or pay interest to prior investors in the EISA Program.

Like the ESIA Program, Pearlman also offered fraudulent investments in an entity called "Transcontinental Airlines Travel Services, Inc." (the "TCTS Stock Program").  In short, the trustee alleges this was another classic Ponzi scheme in which Pearlman and his associates sold stock in a company that was dissolved in 1999 and had no assets, only to use new investor funds to pay off older investors or themselves.

In the third alleged scheme (the "Bank Fraud Scheme"), Pearlman and TCA fraudulently obtained numerous loans from various banks, including the Bank Joint Defense Group, in an

---

[6] Doc. No. 4.

aggregate amount exceeding $150 million. The trustee alleges Pearlman and his accomplices falsified due diligence materials to con the banks into lending himself and TCA millions of dollars. The amended complaint—by virtue of the Pearlman criminal plea agreement, incorporated into the amended complaint under ¶ 2(b) of the Bank Test Case Order[7]—also alleges Pearlman ran the Bank Fraud Scheme "as another Ponzi scheme where he would use the financing that he obtained to make payments on other bank loans or to investors who were victims of his other Ponzi scheme…."[8]

The trustee alleges that, as part of the Bank Fraud Scheme, the debtors maintained a lending relationship with Integra from July 14, 1999, through 2004. Throughout this time, the trustee alleges Pearlman and certain of his companies entered into four separate credit agreements worth millions of dollars. During this time, the trustee alleges Integra failed to conduct appropriate due diligence when extending credit to the debtors, failed to diligently monitor the disposition or use of the loan proceeds, and knowingly ignored information regarding the debtors' financial difficulty when it extended further credit. In particular, the trustee alleges Integra failed to follow its Credit Risk Policy Manual by ignoring the manual's stated geographic limits and scope and continued to extend credit to the debtors despite its "high-risk" internal credit assessment of the companies.

The trustee further alleges that, within four years prior to the petition date, TCA made numerous transfers to Integra in repayment of its loans in the aggregate amount of $3,531,355.52,[9] which transfers were with actual intent to hinder, delay, or defraud present and future creditors. Both TCR and Enterprises also allegedly made transfers to Integra in the

---

[7] Paragraph 2(b) of the Bank Test Case Order states, in part: "In addition, for the sole purpose of prosecuting and defending a motion to dismiss the Subject Adversaries pursuant to Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure and any related appeals, the following additional factual stipulations, *including all exhibits related to the stipulations attached hereto, shall be deemed a part of and incorporated by reference into, the complaints filed in the Subject Adversaries…*" (emphasis added). The Pearlman plea agreement is attached to the Bank Test Case Order as Exhibit D.

[8] Bank Test Case Order, Ex. D, p. 21-22.

[9] See Amended Complaint, Ex. A.

aggregate amounts of $820,815.61[10] and $97,743.59,[11] respectively, without receiving fair or reasonably equivalent value in exchange for those transfers. Integra, however, remains largely unpaid on its loans with Pearlman and has filed four separate proofs of claim in the aggregate amount of $19,882,535.02.[12] As such, Integra likely is a net "loser" in Pearlman's schemes.

The trustee's amended complaint attempts to avoid all of the transfers the debtors made in repayment of Integra's loans as part of the Bank Fraud Scheme (the "Bank Transfers"). In accordance with the Bank Test Case Order, on April 30, 2010, Integra filed its Test Case No. 1 Motion to Dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The motion is based on two arguments. First, Integra argues the complaint should be dismissed because the trustee cannot rely on the "Ponzi scheme presumption" to establish actual fraudulent intent since the Bank Fraud Scheme does not meet the definition of a classic Ponzi scheme. Second, Integra argues the facts alleged in the complaint and stipulated to in the Bank Test Case Order establish on their face the bank's good faith defense to the trustee's action. The Court will address both of the trustee's arguments in turn.

In reviewing a motion to dismiss, courts must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.[13] As the Supreme Court has recently elaborated, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

---

[10] Amended Complaint, Ex. C.
[11] Amended Complaint, Ex. D.
[12] Claim nos. 731-1, 732-1, 765-1, and 766-1.
[13] *Financial Security Assur., Inc. v. Stephens, Inc.*, 450 F.3d 1257, 1262 (11th Cir. 2006).
[14] *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 & 570, 127 S.Ct 1955, 167 L.Ed.2d 929 (2007)).

plausibility of entitlement to relief.'"[15]   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"[16]

Under these principles, to state a claim for avoidance of a transfer based upon actual fraud, the trustee must allege facts sufficient to show the plausibility that both (1) the debtor "transferred an interest in property," and (2) the transfer was made "with actual intent to hinder, delay or defraud creditors."[17]  Given the difficulties in establishing a transferor's actual intent, courts generally look at the totality of the circumstance and the badges of fraud surrounding the transfers to establish the requisite intent.[18]  But in cases involving a Ponzi scheme, courts typically infer fraudulent intent because, as this Court has previously stated, "[a] Ponzi scheme is by definition fraudulent."[19]  For that reason, "any acts taken in furtherance of [a] Ponzi scheme…are also fraudulent.  Every payment made by the debtor to keep the scheme on-going [is] made with actual intent to hinder, delay, or defraud creditors, primarily the new investors."[20] In this adversary proceeding, the trustee can establish actual fraudulent intent by showing that the transfers to the banks were "in furtherance of" a Ponzi scheme.[21]

A Ponzi scheme is generally defined as a "phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors."[22]  In order to prove the existence of a Ponzi scheme, the trustee must establish that: (1) deposits were made by investors; (2) the debtors conducted little or no

---

[15] *Id.*
[16] *Id.* (*citing* Fed. Rule. Civ. Proc. 8(a)(2)).
[17] *In re Evergreen Security, Ltd.*, 319 B.R. 245, 252 (Bankr. M.D. Fla. 2003).
[18] *In re World Vision Entertainment, Inc.*, 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002).
[19] *Cuthill v. Greenmark (In re World Vision Entertainment, Inc.)*, 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002); *see also Wiand v. Waxenberg*, 611 F.Supp.2d 1299, 1312 (M.D. Fla. 2009); *In re Old Naples Securities, Inc.*, 343 B.R. 310, 319-20 (Bankr. M.D. Fla. 2006); *In re McCarn's Allstate Finance, Inc.*, 326 B.R. 843, 849-52 (Bankr. M.D. Fla. 2005).
[20] *World Vision*, 275 B.R. at 656.
[21] Although the amended complaint does not use the phrase "Ponzi scheme presumption," the Bank Test Case Order and the parties' briefs make clear that the trustee's amended complaint relies solely on the presumption to establish the Pearlman Entities' transfers to Integra were made with actual intent to defraud its other creditors.
[22] *United States v. Silvestri*, 409 F.3d 1311, 1317 n. 6 (11th Cir. 2005).

legitimate business operations as represented to investors; (3) the purported business operations of the debtors produced little or no profits or earnings; and (4) the source of payments to investors was from cash infused by new investors.[23]

With these guidelines in mind, the Court finds the Bank Fraud Scheme is not a Ponzi scheme because bank loans are by any definition *not* investments and therefore Integra was not an investor. The trustee's insistence that these bank loans should be considered investments ignores the many real differences between the two concepts, most notably the contractual interest rate on loans versus the unknown risk premium of equity investments. Because the Bank Fraud Scheme is not a Ponzi scheme, the trustee may not rely on the Ponzi scheme presumption solely by virtue of alleging the loan repayments were made pursuant to the Bank Fraud Scheme. To rely on the Ponzi scheme presumption, the trustee must allege the debtors' loan repayments were somehow in furtherance of either the EISA Program or the TCTS Stock Program Ponzi schemes.

The trustee's complaint contains enough allegations to make plausible that the loan repayments were "in furtherance of" either the EISA Program or the TCTS Stock Program, which both are undisputedly Ponzi schemes. As noted above, Pearlman's plea agreement (incorporated by reference into the amended complaint as Exhibit D to the Bank Test Case Order) includes the following statements:

> Despite [the knowledge that many of his representations to the banks were false], PEARLMAN made these misrepresentations to get money from the [banks]. PEARLMAN did that because he had tremendous demands for cash from EISA investors and prior loans made by federally insured financial institutions. In sum, PEARLMAN ran his bank fraud scheme as another Ponzi scheme where he would use the financing that he obtained to make payments on other bank loans or to investors who were victims of his other Ponzi scheme….

The allegation infers that Pearlman used the bank loans to perpetuate his ongoing Ponzi schemes. The Court thus finds it at least plausible that Pearlman's loan repayments to Integra kept credit flowing and stabilized Pearlman's fraudulent house of cards perhaps a bit longer.

---

[23] *Wiand*, 611 F.Supp.2d at 1312.

Going forward, the trustee must establish his allegations beyond mere plausibility. He bears the burden of persuasion to establish that the loan repayments to Integra were in fact made in furtherance of either the EISA Program or the TCTS Stock Program.

Moreover, even if the trustee can show that the Ponzi scheme presumption applies in this adversary proceeding, as this Court has previously stated, payments made by a debtor in furtherance of a Ponzi scheme "…are not automatically avoidable. Courts must assess the good or bad faith of each recipient to determine which are avoidable and which are not."[24] Accordingly, Integra's second argument in favor of dismissal is that the trustee "has pled himself out of court by alleging facts in the Subject Adversaries from which it is facially apparent that the Test Case No. 1 Claims are subject to and barred by the good faith defense" under § 548(c) of the Bankruptcy Code and Fla. Stat. § 726.109(1).[25] Both of these statutes "provide an affirmative defense to actual fraud for individuals to whom the debtor's property is transferred, to the extent the individuals provided the debtor value in exchange for the transfers, and if they took the property in good faith."[26] To prevail on its good faith defense, Integra bears the burden of proving by a preponderance of the evidence that it (1) gave value to the debtors in exchange for the loan repayments, and (2) received the loan repayments in good faith.[27]

The "for value" component of the good faith defense is met because the parties so stipulated in the Bank Test Case Order.[28] The question, then, is whether Integra received the loan repayments in "good faith."

The "good faith" component of the good faith defense is not defined by either the Bankruptcy Code or the Florida Statutes. Nor has the 11th Circuit addressed the definition of "good faith" in this context. The U.S. District Court for the Middle District of Florida, however,

---

[24] *In re World Vision*, 275 B.R. at 658.
[25] Motion to Dismiss, ¶ 76 (Doc. No. 5).
[26] *Evergreen Security*, 319 B.R. at 254; *World Vision*, 275 B.R. at 658.
[27] *Id.*
[28] Doc. No. 2953 in case no. 6:07-bk-00761-KSJ, p. 7.

has stated that "good faith" is an objective standard that looks to both the recipient's actual and imputed knowledge.[29] *Wiand* states that a transferee's "lack of actual knowledge of the debtor's fraudulent purpose is relevant to the good faith inquiry, but not dispositive," because it is also relevant whether the transferee "had knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence, would have led to the discovery of the [transferor's] fraudulent purpose."[30]

Under this standard, to demonstrate its "good faith," Integra has the burden of showing that it neither "knew or should have known" of the debtor's fraudulent purposes. Because the Bank Test Case Order stipulates "[t]he defendants named in the Subject Adversaries had no actual knowledge of the debtors' fraudulent schemes described in Pearlman's plea agreement…and/or the complaints filed in the Subject Adversaries,"[31] the only issue is whether Integra is deemed to have imputed knowledge, or inquiry notice, of the debtors' allegedly fraudulent purpose in repaying the loans.

Whether a transferee is deemed to have imputed knowledge of a debtor's fraudulent purpose in making a transfer is a fact intensive inquiry. For this reason, this determination is typically inappropriate for the Court to decide on a motion to dismiss.[32] However, where a complaint "contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)."[33] Integra argues its good faith defense is facially apparent from the facts in the complaint and the stipulations in the Bank Test Case Order, and that dismissal is therefore warranted, relying heavily on a recent decision of the Bankruptcy Court for the Eastern

---

[29] *Wiand*, 611 F.Supp.2d at 1319-20.
[30] *Id.*
[31] Doc. No. 2953 in case no. 6:07-bk-00761-KSJ, p. 7.
[32] Two bankruptcy courts in other jurisdictions have held that determination of the good faith defense is inappropriate at the motion to dismiss stage: *Notinger v. Costa, et al, (In re Robotic Vision Systems, Inc.)*, 374 B.R. 36, 59 (Bankr. N.H. 2007); *Miller v. McCown Deleeuw & Co., Inc. (In re Brown Schools)*, 368 B.R. 394, 408 (Bankr. D. Del. 2007).
[33] *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009); *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001).

Pearlman 09-ap-715 MO Denying TC1 Mo. to Dismiss5.doc / / Revised: 12/2/2010 1:48:00 PM        Printed: 12/2/2010
Page: 9 of 11

District of Pennsylvania.[34]  In *In re Image Masters*, the court dismissed the plaintiff's counts for actual fraudulent transfer because it found defendants received the transfers at issue for value and in good faith based on a review of "the Complaint, the exhibits, and the trustee's concessions."[35]  Notably absent from *Image Masters*, however, is *any* analysis of whether the defendant had inquiry notice of the transferor's fraudulent purposes.

Here, where the trustee has alleged that Integra ignored "information regarding the borrower's financial difficulty," the trustee has pled sufficient facts to establish the plausibility of its claim that Integra "should have known" of Pearlman's fraudulent purposes.  Although the trustee's complaint does not specify how Integra would have uncovered Pearlman's fraudulent scheme had it followed up on some of the alleged "warnings signs of difficulty," it is at least plausible that Integra could have done so, given the widespread and complete nature of Pearlman's fraudulent borrowing tactics.  It is therefore incumbent upon the trustee going forward to prove that Integra (1) failed to investigate "red flags" that a reasonably prudent lender would have investigated, and (2) that such inquiry, undertaken with reasonable diligence, would have uncovered Pearlman's fraudulent scheme.

For the foregoing reasons the Court will deny Integra's motion to dismiss.[36]  An Order consistent with this memorandum opinion will be entered simultaneously.

DONE AND ORDERED in Orlando, Florida, on December 2, 2010.

*(signed)* cxc

KAREN S. JENNEMANN
United States Bankruptcy Judge

---

[34] *Feldman v. Chase Home Finance (In re Image Masters, Inc.)*, 421 B.R. 164, 181-83 (Bankr. E.D. Pa. 2009)(dismissing complaint under Rule 12(b)(6) upon finding defendant took transfers for value and in good faith).
[35] *Id.* at 182.
[36] Doc. No. 5.

Copies provided to:

Plaintiff:  Soneet R. Kapila, PO Box 14213, Ft. Lauderdale, FL  33302

Attorney for Plaintiff:  Gregory M. Garno, 100 Southeast 2nd St., Ste 4400, Miami, FL  33131

Defendant:  Integra Bank, 21 SE Third Street, Evansville, IN  47708

Attorney for Defendant:  Amy E. Lowen, 450 S. Orange Avenue, #650, Orlando, FL  32801