UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| LOUIS J. PEARLMAN, *et al.*, ) | Case No. 6:07-bk-00761-KSJ |
| ) | Chapter 11 |
| Debtor. ) | Jointly Administered |
| ) | |
| | |
| SONEET R. KAPILA, as CHAPTER 11 ) | |
| TRUSTEE for TRANS CONTINENTAL ) | |
| AIRLINES, INC., TRANS ) | Adv. P. No. 6:09-ap-00715-KSJ |
| CONTINENTAL RECORDS, INC., and ) | |
| LOUIS J. PEARLMAN ENTERPRISES, ) | |
| INC., ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| INTEGRA BANK, N.A. ) | |
| ) | |
| Defendant. ) | |
| ) | |

MEMORANDUM OPINION PARTIALLY GRANTING AND PARTIALLY DENYING
BANK JOINT DEFENSE GROUP TEST CASE NO. 2 MOTION TO DISMISS

Integra Bank, N.A., seeks dismissal of Count III of the amended complaint filed by the Chapter 11 trustee, Soneet R. Kapila,[1] which asserts a claim for avoidance of constructive fraudulent transfers under Bankruptcy Code[2] § 544(B)(1) and Florida Statutes §§ 726.105(1)(B), 726.106(1), and 726.108, based on payments made to Integra by the "wrong payor."[3] An essential element of a constructive fraudulent transfer claim is that the paying or transferring entity did not receive "reasonably equivalent value" in exchange for the transfer made. Integra

---

[1] Doc. No. 4.
[2] All references to the Bankruptcy Code shall be to Title 11 of the United States Code.
[3] Doc. No. 6. The Chapter 11 trustee, Soneet R. Kapila, filed a Response in Opposition to Bank Joint Defense Group's Test Case No. 2 Motion to Dismiss and Memorandum in Support Thereof (Doc. No. 10). Integra subsequently filed a Reply in Support of its Motion to Dismiss (Doc. No. 14), and the trustee filed a Sur-Reply in Opposition (Doc. No. 18). Integra's motion (Doc. No. 6) actually seeks dismissal of *all* "wrong payor" constructive fraud causes of action in *each* of the complaints filed by the trustee in the Subject Adversaries (as defined below). Integra is mistaken about the scope of this Test Case. These proceedings, including this order, pertain *only* to this adversary proceeding. Possible factual differences preclude the Court from ordering dismissal of constructive fraud counts in each of the Subject Adversaries. As such, the scope of this Memorandum Opinion is limited to addressing the dismissal of Count III in the amended complaint filed in this adversary proceeding.

argues that, now that the paying Debtor entities[4] involved in this adversary proceeding are substantively consolidated[5] and their assets and liabilities pooled, each is deemed to have received "reasonably equivalent value" in exchange for their payments to Integra. As such, Integra argues the Court should dismiss Count III.

The amended complaint, however, alleges that, in at least one instance, a Debtor entity made payments on behalf of *both* a Debtor and a *non*-Debtor entity. So, although Integra is correct that substantive consolidation requires dismissal of the trustee's allegations concerning payments made by any Debtors on behalf of preexisting debts incurred by other joint Debtors, the same does not hold true for Debtor payments made on behalf of *non*-Debtor entities, which have not yet been substantively consolidated with the Debtors. The Court accordingly will grant in part and deny in part Integra's motion to dismiss Count III of the amended complaint.

Since the commencement of these jointly administered bankruptcy cases,[6] the Chapter 11 trustee has filed over 700 adversary proceedings seeking to recover alleged fraudulent transfers. Relevant to this proceeding, on or about April 4, 2009, the trustee filed adversary complaints (the "Subject Adversaries") against Tatonka Capital Corporation, Integra Bank, N.A., American Bank of St. Paul, First National Bank & Trust Company of Williston, Bank of America, N.A., First International Bank and Trust and its participants (together, the "Bank Joint Defense Group"), and numerous other financial institutions that loaned money to Pearlman or his companies and that subsequently received repayments from or on behalf of the Debtors in connection with such loans.[7] These adversaries assert, among other things, claims for actual fraudulent transfer under § 548(a)(1)(A) of the Bankruptcy Code and analogous Florida Statutes,

---

[4] The debtors in these jointly administered cases are: Louis J. Pearlman ("Pearlman"); Louis J. Pearlman Enterprises, Inc.; Louis J. Pearlman Enterprises, LLC; TC Leasing, LLC; Trans Continental Airlines, Inc., Trans Continental Aviation, Inc.; Trans Continental Management, Inc.; Trans Continental Publishing, Inc.; Trans Continental Records, Inc.; Trans Continental Studios, Inc.; and Trans Continental Television Productions, Inc. (collectively, the "Debtors").
[5] Order Granting Substantive Consolidation of the Joint Debtors' Estate, Doc. No. 3488 entered in the Main Case.
[6] On March 1, 2007, certain petitioning creditors filed an involuntary petition under Chapter 11 of the Bankruptcy Code against Pearlman and TCA (the "Petition Date"). Further bankruptcy petitions for the remaining Debtors were filed on March 7, 2007, April 18, 2007, and thereafter.
[7] The Subject Adversaries include: 09-ap-67, 09-ap-54, 09-ap-534, 09-ap-750, 09-ap-106, 09-ap-52, 09-ap-715, 09-ap-71, 09-ap-68, 09-ap-864, 09-ap-50, 09-ap-474, 09-ap-716, and 09-ap-51.

and claims for constructive fraudulent transfer under §§ 544(b) and 550 of the Bankruptcy Code and Fla. Stat. §§ 726.105(1), 726.106(1), and 726.108.

On April 16, 2010, this Court entered the Bank Test Case Order adopting procedures to facilitate the orderly, prompt, and efficient resolution of the Subject Adversaries.[8]  The Bank Test Case Order established two test cases to help resolve the Subject Adversaries.  Test Case No. 1 assesses the trustee's claims for *actual* fraudulent transfer, while Test Case No. 2 assesses the trustee's claims for *constructive* fraudulent transfer.  Soon after entry of the Bank Test Case Order, the Bank Joint Defense Group selected Integra Bank as the lead bank for litigation purposes, which made this adversary proceeding the lead adversary proceeding for all Test Case litigation.

The trustee's first amended complaint against Integra alleges, in short, that Pearlman and certain of his co-Debtor companies—Trans Continental Airlines ("TCA"), Trans Continental Records ("TC Records"), and Louis J. Pearlman Enterprises, Inc. ("Enterprises")—perpetrated three different fraudulent money making schemes.[9]  Two of the schemes were fraudulent investment schemes that all parties agree fit the classic Ponzi scheme model.  The first was known as the "Employee Investment Savings Account" (the "EISA Program"), under which TCA raised in excess of $300 million from hundreds of investors nationwide.  Pearlman, his broker intermediaries, and others at TCA allegedly promised investors, among other things, above-market rates of return for their investment and that their investments were FDIC insured.  Neither representation was true, and, instead, Pearlman and his cronies pocketed much of the investment funds and used new investments to repay or pay interest to prior investors in the EISA Program.

---

[8] Doc. No. 2953 in the Pearlman main case.
[9] Doc. No. 4.

Like the ESIA Program, Pearlman also offered fraudulent investments in an entity called "Transcontinental Airlines Travel Services, Inc." In short, the trustee alleges this was another classic Ponzi scheme in which Pearlman and his associates sold stock in a company that was dissolved in 1999 and had no assets, only to use new investor funds to pay off older investors or themselves.

In the third alleged scheme, Pearlman and TCA fraudulently obtained numerous loans from various banks, including the Bank Joint Defense Group, in an aggregate amount exceeding $150 million (the "Bank Fraud Scheme"). The trustee alleges Pearlman and his accomplices falsified due diligence materials to con the banks into lending himself and TCA millions of dollars.

The trustee further alleges that, as part of the Bank Fraud Scheme, some of the Debtors maintained a lending relationship with Integra from July 14, 1999, through 2004. Throughout this time, the trustee alleges a non-Debtor entity, Trans Continental Pictures ("TC Pictures"), and certain of the Debtors—TC Records, Pearlman individually, and TCA (the "Borrowing Entities")—entered into five separate credit agreements worth approximately $19,000,000 in the aggregate.[10] The trustee also alleges certain other Debtors—TC Records and Enterprises (the "Paying Entities")—made transfers to Integra between March 3, 2003, and November 10, 2004, in the aggregate amounts of $1,522,241.29[11] and $97,743.59,[12] respectively, without receiving reasonably equivalent value in exchange. In particular, the trustee alleges TC Records transferred funds to Integra during this time period in repayment of loans obtained by both TC Pictures (a non-debtor) and Pearlman.[13] Likewise, the trustee alleges Enterprises made one

---

[10] The amended complaint does not set forth the value of the loans made to TC Pictures, TC Records or Pearlman individually, but does allege that on September 18, 2004, TCA executed two notes consisting of (i) a $16,000,000 term loan and (ii) a $3,000,000 revolving credit facility (the "Consolidation Loans"), which consolidated several other notes, including the loans to TC Pictures, TC Records, and to Pearlman individually. The only "new money" extended to TCA was $2,991,791. Thus, by the terms of the amended complaint, the value of the previous loans to TC Pictures, TC Records, and Pearlman likely does not exceed roughly $13 million.
[11] Amended Complaint, Ex. C.
[12] Amended Complaint, Ex. D.
[13] Amended Complaint, Ex. C.

transfer to Integra in repayment of the Pearlman loan.[14] The trustee moreover alleges that, within four years prior to the petition date, TCA made numerous transfers to Integra in repayment of its loans in the aggregate amount of $3,531,355.52,[15] which transfers were with actual intent to hinder, delay, or defraud present and future creditors. Overall, Integra remains largely unpaid on its loans with Pearlman and has filed four separate proofs of claims in the aggregate amount of $19,882,535.02.[16] As such, Integra is a substantial net "loser" in Pearlman's schemes.

Count III of the trustee's amended complaint attempts to avoid all of the transfers from the Paying Entities to Integra in repayment of loans obtained by the Borrowing Entities, arguing these transfers are constructively fraudulent because the "wrong payor" did not receive value in exchange for the loan repayments. In accordance with the Bank Test Case Order, on July 9, 2010, Integra filed its Test Case No. 2 Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of Count III.[17] The motion argues the wrong payor problem disappears upon a substantive consolidation of the Debtors' estates because the trustee can no longer establish that the transfers were not in exchange for reasonably equivalent value. That is, Integra argues that once the Debtors' assets and liabilities are pooled together, the Paying Entities' payments to Integra must be deemed made in exchange for reasonably equivalent value because the consolidated Debtors received an equivalent reduction in principal and interest on preexisting loans in exchange for the loan repayments. Therefore, Integra argues the Court should dismiss Count III.

---

[14] Amended Complaint, Ex. D.
[15] See Amended Complaint, Ex. A.
[16] Claim nos. 731-1, 732-1, 765-1, and 766-1.
[17] Doc. No. 6.

While conceding that total substantive consolidation of the Debtors' estates likely will result in the dismissal of his "wrong payor" constructive fraudulent transfer claims, the trustee instead strenuously argues the Court should order a partial consolidation to preserve these "wrong payor" claims.[18]  However, this Court is simultaneously ruling that the trustee is not entitled to a partial substantive consolidation because it is contradictory to the purpose of consolidation and ignores the realities of how Pearlman ran the Debtor entities.[19]  In short, the Court finds the Debtors operated substantially as one financial entity and the Debtors' estates would benefit greatly from avoiding the costs associated with the quixotic task of trying to sort out the assets and liabilities of their respective estates.  Upon substantive consolidation, all of the Debtors' assets and liabilities are combined for all purposes, regardless of the implications for the trustee's "wrong payor" claims.  Though the Court acknowledged the trustee's "wrong payor" claims likely may be dismissed as a result of substantive consolidation, the Court could not make a global ruling that such claims are dismissed in all adversary proceedings.

Here, the Court must determine whether to dismiss Count III *in this particular adversary proceeding* in light of consolidation.  In reviewing a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6),[20] courts must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.[21]  Dismissal is appropriate under Rule 12(b)(6) if the plaintiff "can prove no set of facts that would support the claims in the complaint."[22]  As the Supreme Court recently has elaborated, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23]  "When a complaint pleads

---

[18] Doc. Nos. 10, 18, and Doc. Nos. 3365 and 3417 in the Main Case.
[19] Memorandum Opinion Granting Substantive Consolidation, Doc. No. 3487 entered in the Main Case.
[20] Made applicable to bankruptcy proceedings by Bankruptcy Rule 7012(b)(6).
[21] *Financial Security Assur., Inc. v. Stephens, Inc.*, 450 F.3d 1257, 1262 (11th Cir. 2006).
[22] *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).
[23] *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 & 570, 127 S.Ct 1955, 167 L.Ed.2d 929 (2007)).

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[24]  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"[25]

To state a claim for avoidance of a transfer based upon constructive fraud under §§ 544(B)(1) and 550 of the Bankruptcy Code and Fla. Stat. §§ 726.105(1)(B), 726.106(1), and 726.108, the trustee must allege facts sufficient to show the plausibility that (1) the Paying Entities "transferred an interest in property," (2) the Paying Entities received "less than a reasonably equivalent value" in exchange for such transfer, and (3)(i) were insolvent on the date that such transfer was made or such obligation was incurred, (ii) were engaged in business with an unreasonably small amount of capital, (iii) intended to incur debts beyond the Debtors' ability to pay such debts, or (iv) made such transfer to or for the benefit of an insider of the Debtors outside of the ordinary course of business.[26]

As to the second part of this test, Fla. Stat. § 726.104 states: "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied [.]"  Thus, loan repayments on a present or antecedent debt normally constitute "reasonably equivalent value" to debtors because the debtors in exchange receive "a reduction in the principal and interest of their loan by an equal amount."[27]

Every reported decision this Court has reviewed that addresses whether purported "wrong payor" debtor entities are deemed post-consolidation to have received reasonably equivalent value as a result of consolidation with the borrowing debtor entity suggests the answer is in the

---

[24] *Id.*
[25] *Id.* (*citing* Fed. Rule. Civ. Proc. 8(a)(2)).
[26] Bankruptcy Code § 548(a)(1)(B).
[27] *Kipperman v. Onex Corp.*, 411 B.R. 805, 851 (N.D. Ga. 2009); *see also In re Colombian Coffee Co., Inc.*, 62 B.R. 542, 545 (Bankr. S.D. Fla. 1986).

affirmative.[28]  The logic of these opinions is best summarized in *In re Deltacorp*:

> The issue is whether the consolidated debtors are entitled to recover a constructively fraudulent transfer when one of them received fair consideration for that transfer so that the consolidated estate is augmented and diminished in equal amounts by the consideration received and the subsequent transfer in payment of the debt thereby incurred.  To state the issue clearly is almost to resolve it, because it makes little sense to permit the consolidated estate to recover a transfer not made with actual fraudulent intent when the estate has not been harmed.  The effect on the creditors is identical whether repayment was made by the recipient of the consideration or some other consolidated debtor.[29]

The Court agrees with this logic.  The trustee has alleged, in part, that both TC Records and Enterprises, respectively, made transfers in repayment of Integra loans obtained by Pearlman, a consolidated Debtor.[30]  As noted in *In re DeltaCorp*, because these three Debtor entities (TC Records/Enterprises/Pearlman) are now substantively consolidated, the determination of whether the Paying Entities received reasonably equivalent value in exchange for their transfers turns only on whether the consolidated Debtors' estate received value in exchange.  Given that Integra applied the payments to reduce Pearlman's loan obligations, after consolidation it is immaterial which Debtor entity made the payment: the consolidated Debtors' estate benefitted from repayments of the Pearlman loan made by *any* of the Debtor entities, and likewise *any* Debtor that made repayments of *any* loan obtained by *any* other Debtor benefitted from the reduced principal and interest on such loan.  The Court therefore finds that both TC Records and Enterprises, under any set of facts the trustee could introduce, received reasonably equivalent value in exchange for the transfers to Integra in repayment of the Pearlman loan.  Integra's motion to dismiss is granted to this extent.

---

[28] *Telesphere Liquidating Trust v. Galesi*, 246 B.R. 315, 321 (N.D. Ill. 2000) ("Substantive consolidation eliminates fraudulent transfer claims arising from one debtor's payment of a debt owed by another consolidated debtor.") (citing *Chemical Bank N.Y. Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1996)); *Moran v. Hong Kong & Shanghai Banking Corp. (In re Deltacorp, Inc.)*, 179 B.R. 773, 779 (Bankr. S.D.N.Y 1995) (concluding constructive fraudulent transfer claims fail as a result of substantive consolidation because the debtors received fair consideration in exchange for transfer of funds); *Gill v. Sierra Pac. Constr., Inc. (In re Parkway Calabasas, Ltd.)*, 89 B.R. 832, 839 (Bankr. C.D.Cal. 1988) (finding substantive consolidation eliminated fraudulent transfer claims because it left "no party unjustly enriched and no creditors looking to an impoverished asset pool for payment."); *see also In re Bonham*, 229 F.3d 750, 768 (9th Cir. 2000) ("Absent express preservation of the trustee's avoidance power, an order of substantive consolidation would ordinarily eliminate that power."); *In re Giller*, 962 F.2d 796, 799 (8th Cir. 1992) ("We recognize that substantive consolidation normally would eliminate the justification for the exercise of the trustee's avoidance power.").
[29] *In re Deltacorp*, 179 B.R. at 779.
[30] Amended Complaint, Exs. C and D.

However, the trustee also has alleged TC Records (a Debtor) transferred funds to Integra in repayment, at least in part, of a loan incurred by a *non*-Debtor entity, TC Pictures. The complaint alleges that "[o]n July 14, 1999, TC Pictures executed a Revolving Credit Promissory Note, Account No. 100001106."[31] The trustee's Exhibit C attached to the amended complaint purports to be a spreadsheet showing transfers from TC Records to Integra in repayment of both the TC Pictures loan and a separate loan to Pearlman individually.[32] The caption to Exhibit C reads: "Integra Bank – Transfers for Loans #100036068 & #100001106 – 4 Year," which are the alleged account numbers for the Pearlman loan and the TC Pictures loan, respectively.[33] Although the exact dollar amounts of the funds transferred to Integra in repayment of each loan is not indicated by the trustee's exhibit, the trustee nonetheless has alleged that TC Records at least made some transfers to Integra in repayment of a preexisting debt not shared by the consolidated Debtors. Therefore, regardless of consolidation, the trustee's complaint has alleged facts sufficient to show the plausibility of the allegation that TC Records transferred funds without receiving reasonably equivalent value in exchange because, under the facts as pleaded, TC Records did not benefit from the reduction in principal and interest that resulted from its loan repayment on behalf of non-Debtor TC Pictures. Integra's motion to dismiss therefore is denied to this extent.

Accordingly, the Court will deny in part and grant in part Integra's motion to dismiss.[34] The motion is denied as to the allegations in Count III of the amended complaint concerning transfers made to Integra by TC Records in repayment of the loan to the non-Debtor entity TC Pictures because TC Pictures has not (yet) been substantively consolidated with the Debtors. The motion is granted, and Count III of the amended complaint is dismissed, to the extent Count III alleges the transfers from TC Records and Enterprises, respectively, to Integra in repayment

---

[31] Amended Complaint, ¶ 54.
[32] Amended Complaint, Ex. C.
[33] Amended Complaint, ¶ 55, 57.
[34] Doc. No. 5.

of the Pearlman loan were constructively fraudulent transfers.  Going forward, it is incumbent on the trustee to show exactly which TC Records transfers are alleged to be in repayment of the TC Pictures loan and which were in repayment of the Pearlman loan.  An Order consistent with this memorandum opinion will be entered simultaneously.

    DONE AND ORDERED in Orlando, Florida, on April 26, 2011.

_____
KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Plaintiff:  Soneet R. Kapila, PO Box 14213, Ft. Lauderdale, FL  33302

Attorney for Plaintiff:  Gregory M. Garno, 100 Southeast 2nd St., Ste 4400, Miami, FL  33131

Defendant:  Integra Bank, 21 SE Third Street, Evansville, IN  47708

Attorney for Defendant:  Amy E. Lowen, 450 S. Orange Avenue, #650, Orlando, FL  32801